UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CRIMINAL CASE NO. |
| | : | 3:11-cr-192 (JCH) |
| v. | : | |
| | : | |
| JACQUES KELLY, | : | JULY 18, 2014 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL (Doc. No. 553)**

**I.   INTRODUCTION**

On April 18, 2014, defendant Jacques Kelly was convicted of one count of conspiracy to commit wire, mail, and/or bank fraud, one count of wire fraud, and one count of making a false statement to a financial institution. Kelly now moves for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. In the alternative, Kelly moves for a new trial pursuant to Rule 33. Defendant's Motion for Judgment of Acquittal and for Motion for New Trial ("Def.'s Mot.") (Doc. No. 553).

For the reasons set forth below, Kelly's Motions for Judgment of Acquittal and for New Trial (Doc. No. 553) are **DENIED**.

**II.   BACKGROUND**

On February 14, the grand jury returned a five-count Second Superseding Indictment against Kelly, Andrew Constantinou, Genevieve Salvatore, Lawrence Dressler, and Kwame Nkrumah.[1]  Second Superseding Indictment (Doc. No. 150). The Second Superseding Indictment charged Kelly with conspiracy, in violation of section

---

[1] The grand jury had previously returned two indictments against Kelly: the first Indictment, issued on October 5, 2011, charged Kelly with conspiracy and wire fraud; the Superseding Indictment, issued on February 24, 2012, additionally charged Kelly with mail fraud.  Indictment (Doc. No. 1) ¶¶ 1-16, 20; Superseding Indictment (Doc. No. 44) ¶ 19.

1349 of title 18 of the United States Code (Count One), wire fraud, in violation of section 1343 of title 18 of the United States Code (Count Four), and making a false statement to a financial institution, in violation of section 1014 of title 18 of the United States Code (Count Five).  Id. ¶¶ 12-30, 34, 36.

The Second Superseding Indictment alleged that Kelly, along with a number of known and unknown co-conspirators, conspired to unlawfully enrich himself by obtaining millions of dollars in real estate mortgages through the use of, among other things, materially false loan applications, loan documents, and HUD-1 forms, and to conceal the scheme from others.  Second Superseding Indictment ¶ 13.  Kelly's alleged role in the conspiracy was to fraudulently purchase multi-family properties in New Haven, Connecticut by applying for mortgages from mortgage lenders and federally-insured financial institutions to finance the purchase.  Id. ¶¶ 14, 17.  In applying for these mortgages, the Second Superseding Indictment alleged, Kelly was to make, or cause to be made, materially false statements to obtain financing.  Id. ¶ 20.  As further part of the conspiracy, Kelly allegedly entered into sales contracts with sellers of real property for prices higher than the actual prices that the sellers agreed to receive, and did receive, at closing, and then rented out units in the fraudulently obtained properties to obtain income.  Id. ¶¶ 18, 23.  For the purpose of executing the conspiracy, Kelly was alleged to have knowingly transmitted a wire transfer in the amount of $236,115.00 from Sovereign Bank in New Jersey to co-conspirator Brad Reiger's attorney trust account at Liberty Bank in Connecticut, in connection with Kelly's purchase of 47 Lloyd Street in New Haven, and to have submitted or caused to be submitted a HUD-1 form, in connection with his purchase of 115 Lloyd Street in New Haven, showing his payment

of the amount of $35, 264.90, in purchasing the property when, in fact, Kelly paid no such funds.  Id. ¶¶ 34, 36.

At trial, the government presented the following evidence against Kelly: (1) false HUD-1s for 569 Elm Street, 436 Poplar Street, 115 Lloyd Street, 9 Grace Street, and 147 Lloyd Street bearing Kelly's signature and showing that he agreed to bring thousands of dollars to closings when he did not, in fact, do so; (2) fake leases bearing Kelly's signature for Kelly's purchase of 147 Lloyd Street and attempted purchase of 129 Winthorp; (3) contract addenda not disclosed to the lender showing purchase prices significantly less than the original contract prices and the prices on the HUD-1s; (4) bank statements showing Kelly's borrowing of $30,000 from co-conspirators Ronald Hutchinson and Nkrumah and moving the money between bank accounts to create a false bank verification sent to lender Sterling Empire to support his application for a mortgage to purchase 147 Lloyd Street; (5) six checks totaling over $56,000, which Kelly received at closings; (6) a false HUD-1 for Kelly's sale of 141 Saltonstall Avenue showing that he received $30,000 from Hutchinson at the closing when he, in fact, did not; (7) FedEx receipts and wire transfers; (8) testimony from cooperating witness Joseph Levitin as to Kelly's role and participation in the conspiracy; and (9) Kelly's own statements, admitted through the testimony of FBI Investigator David Rhieu, regarding his knowledge that fake leases were created and submitted to lenders in support of his mortgage applications and his admission that he bought houses with no money down and got cash back at closings, when the HUD-1s submitted to the lenders did not reflect this.

On April 10, 2014, at the close of the government's case, Kelly moved for a judgment of acquittal pursuant to Rule 29(a).  Oral Motion for Judgment of Acquittal (Doc. No. 493).  The court denied the Motion.  Minute Entry (Doc. No. 496).  On April 18, 2014, the jury returned a verdict of guilty on all counts against Kelly.  Jury Verdict (Doc. No. 511).  Following the jury's verdict, Kelly filed the instant post-trial Motions.

### III.   DISCUSSION

As a threshold matter, the government contends that Kelly's Motions should be denied because they were not timely filed.  Government's Opposition to Defendant Kelly's Motion for Judgment of Acquittal and/or for New Trial (Doc. No. 575) at 2-3.  Federal Rule of Criminal Procedure 29(c)(1) permits a defendant to move for a judgment of acquittal, or renew such a motion, "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."  Fed. R. Crim. P. 29(c)(1).  Federal Rule of Criminal Procedure 33(b)(2) provides that a motion for new trial on any basis other than newly discovered evidence "must be filed within 14 days after the verdict or finding of guilty."  Id. 33(b)(2).

Kelly's Motions would appear to be time-barred, as they were filed nearly four weeks after the 14-day post-verdict deadline for Rule 29 and Rule 33 motions.  However, the court notes that, just after the verdict, there was some ambiguity as to when precisely such motions were to be filed.  Upon counsel's anticipation that preparation of post-trial motions might take counsel some time because of a need to acquire documents, the court instructed the parties to discuss a date for filing such motions, and to file an extension accordingly.  Transcript (Doc. No. 566) at 2198:19-25; 2199:1.  While a motion for extension was not filed by undersigned counsel, it was filed

4

by counsel for Kelly's co-defendant at trial Andrew Constantinou. See Constantinou Motion for Extension of Time to File Post-Trial Motions (Doc. No. 534).

In light of the apparent lack of clarity regarding when post-trial motions were to be made, as well as the lack of prejudice that the untimeliness of Kelly's Motions presents to the government, given that Constantinou's Rule 29 and Rule 33 motions were also filed after the 14-day post-verdict window, the court finds that the delay in filing of Kelly's Motions was the result of excusable neglect and, thus, considers them despite their untimeliness. See Advisory Committee Notes, Fed. R. Crim. P. 29 ("[U]nder Rule 45(b)(1)(B), if for some reason the defendant fails to file the underlying motion within the specified time, the court may nonetheless consider that untimely motion if the court determines that the failure to file it on time was the result of excusable neglect."); Advisory Committee Notes, Fed. R. Crim. P. 33 (same); Williams v. KFC Nat. Management Co., 391 F.3d 411, 415 (2d Cir. 2004) (considering "all relevant circumstances," including the danger of prejudice to the non-moving party, the length of the delay and its impact on judicial proceedings, the reason for the delay, and whether the moving party acted in good faith in determining whether delay was due to excusable neglect).

    A. Motion for Judgment of Acquittal

        i.     Standard of Review

Rule 29 requires the court, upon motion by the defendant, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). However, in challenging the sufficiency of the evidence supporting his conviction, "the defendant faces an uphill battle, and bears a very heavy burden." United States v. Mi Sun Cho, 713 F.3d 716, 720 (2d Cir. 2013) (citation and

internal quotation marks omitted).  In deciding such a motion, the court must view the evidence in the light most favorable to the government, draw all inferences in favor of the government, and defer to the jury's assessment of the witnesses' credibility.  United States v. Hawkins, 547 F.3d 66, 70 (2d Cir. 2008).  The jury verdict should stand so long as "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Mi Sun Cho, 713 F.3d at 720 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  In deciding a Rule 29 motion, "the evidence must be viewed in its totality, as each fact may gain color from others," and the court must exercise care not to substitute its determination of the weight of the evidence, and of the reasonable inferences to be drawn therefrom, for that of the jury.  United States v. Cassese, 428 F.3d 92, 98-99 (2d Cir. 2005).

      ii.    Conspiracy

To convict Kelly of the crime of conspiracy charged in Count One, the jury had to find that the government had proven beyond a reasonable doubt the following two elements:

> (1) That two or more persons entered into the unlawful agreement charged in the Indictment;
>
> (2) That [Kelly] knowingly and willfully became a member of the conspiracy, with a specific intent to commit wire fraud, mail fraud, and/or bank fraud.

Jury Charge (Doc. No. 589) at 43; see 18 U.S.C. § 1349; see also United States v. Albers, No. 08-CR-819, 2011 WL 1225548, at *1 (E.D.N.Y. Mar. 31, 2011).  "To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowing joined and participated in it."  U.S. v.

6

Lorenzo, 534 F.3d 153, 159 (2d Cir. 2008) (internal quotation marks omitted).  "[O]nce a conspiracy is shown to exist, the evidence sufficient to link another defendant to it need not be overwhelming. . . . But suspicious circumstances . . . are not enough to sustain a conviction for conspiracy . . . and mere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement."  Id. (internal quotation marks and citations omitted).  A defendant's "mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in the conspiracy even if the defendant has knowledge of the conspiracy."  Id. at 159-60 (internal quotation marks omitted).

Kelly contests the verdict on the grounds that the government proffered no evidence of his knowing involvement in the conspiracy or that he had the specific intent to commit wire fraud or bank fraud.  Def.'s Mot. at 8, 9.  The court, however, finds no merit in this argument.

The trial evidence sufficiently supported a finding that Kelly's involvement in the conspiracy was knowing and that he had a specific intent to commit wire fraud and bank fraud.  The jury could have found that Kelly was not merely present at the scene of the fraudulent closings at the center of the charged conspiracy, but rather was actively involved in the scheme, based on the testimony of FBI Investigator Rhieu that Kelly knew that some of the apartments being purchased were vacant, that fake leases were created and submitted to lenders in support of his mortgage applications, and that he had purchased houses with no money down but received cash back at closings.  The jury could also have inferred that Kelly knowingly engaged in the conspiracy, with the intent to accomplish mail, bank, or wire fraud, from the documentary evidence produced

by the government, namely: the fake leases and false HUD-1s bearing Kelly's signature, Gov't's Exs. 3008, 2501, 2600, 2700, 2800, 2900, 3000; contract addenda not disclosed to the lender showing purchase prices significantly less than those reported on the HUD-1s, Gov't's Exs. 2503, 2704; checks which Kelly received at closings, Gov't's Exs. 1910, 3032; a false HUD-1 for Kelly's sale of 151 Saltonstall Avenue showing that he received $30,000 from Hutchinson when he did not, Gov't's Ex. 1000; and Kelly's shifting of $30,000 received from Hutchinson and Nkrumah between bank accounts to create a false bank verification sent to a lender showing an inflated balance in his account used to support his mortgage to purchase 147 Lloyd Street, Gov't's Exs. 3006, 4176, 4192A at 44.

The jury further could have relied upon Levitin's testimony that Kelly knew about the vacant apartments because he walked through some of the properties before he bought them, that he created fake leases while Kelly was present, and that Kelly knew that he could buy properties with no down payments and would receive cash back at closings. Kelly takes issue with Levitin's testimony, as well as that of cooperating witness Jeffrey Weisman, instisting that their testimony "was so self-serving, inconsistent and saddled with such duplicity that, notwithstanding the dictate that the jury is to determine issues of credibility," the court should find it not credible. Def.'s Mot. at 8. The court, however, does not find that it has any cause to do so. All questions of credibility on a Rule 29 motion are to be resolved in favor the government. U.S. v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000). Kelly's unsubstantiated claim that the testimony of Levitin and Weisman was incredible does not provide the court with a basis to invade "the province of the jury . . . [in] determin[ing] whether a witness who may

8

have been inaccurate, contradictory and even untruthful in some respects was nonetheless entirely credible in the essentials of his testimony." U.S. v. O'Connor, 650 F.3d 839, 855 (2d Cir. 2011).

Thus, the trial evidence was more than sufficient to support a finding that Kelly knowingly conspired to commit mail fraud, wire fraud, and/or bank fraud.

### iii. Wire Fraud

To convict Kelly of the crime of wire fraud charged in Count Four, the jury had to find that the government had proven beyond a reasonable doubt the following three elements:

> (1) That there was a scheme or artifice to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises, as alleged in the Indictment;
>
> (2) That Mr. Kelly knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and
>
> (3) That in execution of that scheme, Mr. Kelly used or caused the use of the interstate wires as specified in the Indictment.

Jury Charge at 56; see 18 U.S.C. § 1343; 2 Sand et al., supra, Instruction 44-3. For a charge of wire fraud, "the proof must demonstrate that the defendant had a conscious knowing intent to defraud . . . [and] that the defendant contemplated or intended some harm to the property rights of the victim." Autuori, 212 F.3d at 116 (internal quotation marks omitted). The government may prove fraudulent intent through circumstantial evidence. Id.

The jury similarly could have found, from the evidence submitted by the government, that Kelly knowingly intended to commit wire fraud in connection with his purchase of 147 Lloyd Street. Though Kelly contends that no evidence was presented

9

to the jury that demonstrated that he had the specific intent to commit wire fraud or deprive the victim banks and lending institutions of money or property, Def.'s Mot. at 8-9, the record belies this claim. A jury could have inferred Kelly's fraudulent intent from the government's presentation of Rhieu's testimony, Kelly's creation of a false bank verification to support his application for a mortgage to purchase 147 Lloyd Street, Gov't's Exs. 3006, 4176, 4192A at 44, fake leases sent to the lender in support of Kelly's mortgage application, Gov't's Ex. 3008, Kelly's bank statement showing that he did not have sufficient funds to pay the $32,000 down payment reported on a false HUD-1, Gov't's Exs. 4176, 3000, and Kelly's deposit of a check from a realty company owned by Nkrumah that was not disclosed to the lender, Gov't's Ex. 3032. The jury could also have credited testimony from Judith Crudo, a representative from People's Bank, that the $32,000 down payment was actually paid by the seller and Nkrumah's girlfriend, Shannon Smith, and not, as reported on the HUD-1, Kelly. Based on this evidence, as well as the stipulation that the wire transfer of funds used to fund this purchase was an interstate communication, see Jury Charge at 64, the jury had more than sufficient basis to return a verdict of guilty against Kelly on the wire fraud count.

    iv.    False Statement to Financial Institution

To convict Kelly of the crime of false statement to a financial institution charged in Count Five, the jury had to find that the government had proven beyond a reasonable doubt the following four elements:

    (1) That Mr. Kelly made, or caused to be made, a false statement or report relating to an application to a bank;

    (2) That Mr. Kelly knew the statement to be false;

(3) That Mr. Kelly made, or caused to be made, the false statement or report for the purpose of influencing in any way the bank's action; and

(4) That the bank was, at the time of the offense, insured by the Federal Deposit Insurance Corporation ("FDIC").

Jury Charge at 67; see 18 U.S.C. § 1014; 2 Sand et al., supra, Instruction 37-17.

The trial evidence sufficiently supports the jury's finding that Kelly made a false statement to a financial institution in connection with his purchase of 115 Lloyd Street. Kelly insists that there is "not a scintilla of direct evidence supporting the government's claim" that Kelly knew the statement at issue to be false at the time it was made. Def.'s Mot. at 10. The government, however, produced Rhieu's testimony that Kelly admitted to purchasing 115 Lloyd Street from Nkrumah with no money down and got cash back at closing; a false HUD-1 signed by Kelly and sent to First Central Savings Back reporting that Kelly was to bring more than $35,000 to the closing and that Smith was to receive over $90,000 at this closing, Gov't's Ex. 2800; Kelly's bank statements on the day of the closing showing that he only had just over $6,000 in his account, Gov't's Ex. 4176; a HUD-1 in the closing file of co-conspirator Dresser showing that a $35,000 closing credit was hidden from the bank, Gov't's Ex. 2807; Dressler's check to Smith for just over $57,000, Gov't's Ex. 2816; and a bank deposit slip showing that Kelly deposited a $15,000 check from Nkrumah's realty company shortly after the closing, a payment that was not disclosed on the HUD-1 form signed by Kelly, Gov't's Ex. 2818. A rational jury could find, based on this evidence and its acceptance of the stipulation that First Central Savings Bank is a federally-insured bank, see Jury Charge at 73, that Kelly made a false statement to a financial institution.

B. <u>Motion for New Trial</u>

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, Kelly moves the court, in the alternative, for a new trial. Under Rule 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33(a). A district court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" United States v. Ferguson, 246 F.3d 129, 134 (2d Cir.2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir.1992)). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." Id. In exercising its discretion, the court may weigh the evidence and credibility of witnesses. Autuori, 212 F.3d at 120. However, the court may not "wholly usurp" the jury's role, id., and should defer to the jury's assessment of witnesses and resolution of conflicting evidence unless "exceptional circumstances can be demonstrated." Ferguson, 246 F.3d at 134.

Kelly identifies no extraordinary circumstances which would warrant a new trial here. Having examined the record, the court concludes that no such circumstances are present, that the jury's verdict is adequately supported by the record, and that the interests of justice do not require a new trial. Accordingly, the court denies Kelly's Rule 33 Motion.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** Kelly's Motion for a Judgment of Acquittal and Motion for a New Trial (Doc. No. 553).

**SO ORDERED.**

Dated at New Haven, Connecticut this 18th day of July, 2014.

                                             /s/ Janet C. Hall
Janet C. Hall
United States District Judge